## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DAVID IKE THORNTON, | : | PRISONER CIVIL RIGHTS |
| Plaintiff, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | |
| | : | |
| SHERIFF NEIL WARREN, | : | CIVIL ACTION NO. |
| Defendant. | : | 1:20-CV-0869-TWT-RDC |

### UNITED STATES MAGISTRATE JUDGE'S ORDER
### AND FINAL REPORT AND RECOMMENDATION

The matter is before the Court on Plaintiff's First Amendment claim against Sheriff Neil Warren [see Doc. 1 at 3; Doc. 12 at 10-11; Doc. 18], Plaintiff's motion for summary judgment [Doc. 35] and Defendant's response [Doc. 43], Plaintiff's motion for default judgment [Doc. 44] and Defendant's response [Doc. 47], and Defendant's motion for summary judgment [Docs. 42, 45] and Plaintiff's response [Doc. 49]. The Clerk of Court is **DIRECTED** (1) to seal all of the material classified as Defendant's exhibit one [Doc. 42-3], as it contains sensitive information, and (2) to refile as a separate entry (that need not be sealed) the portion of exhibit one which is titled Declaration of Sonya F. Allen [Doc. 42-3 at 2-12].

I.    **Discussion**

In his sworn complaint, Plaintiff has alleged (1) that prisoners at the detention center, including Plaintiff, were placed in lock down for all but fifteen minutes (reportedly to shower) of each twenty-four hour period; (2) that they were allowed no phone calls or visits; and (3) that, on the date he signed his complaint, February 1, 2020, "we on still lock down."  [Doc. 1 at 3; see also Doc. 12 at 3-4].

The Court determined that, depending on, *inter alia*, the penological justifications that may come to light and other avenues of communication that may be open to Plaintiff, his allegations of an ongoing lockdown, which apparently includes an ongoing denial of visitation and phone communication, were sufficient to raise a claim against the Sheriff based on a violation of his First Amendment communication rights.  [Doc. 12 at 9; Doc. 18].  Both parties have now moved for summary judgment, and Plaintiff has moved for default judgment.  [Docs. 35, 42, 44].

As a preliminary matter, Plaintiff's motion for default judgment is due to be denied.  Plaintiff appears to seek default judgment based on an assertion that Defendant failed to comply with the Court's December 7, 2020 order setting the times for filing motions for summary judgment and, if no motion for summary judgment

was filed, for filing proposed pretrial orders.   [See Docs. 33, 44].   Both parties, however, have timely filed motions for summary judgment (Defendant after obtaining an extension of time) [Docs. 35, 36, 40, 42], and the Court perceives no basis for default judgment.

### A.   Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the burden of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In deciding a motion for summary judgment, the court examines the "pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party."  Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999)).  The court does not determine the probative value of the evidence – "[i]ssues concerning the credibility of witnesses and weight of the

evidence are questions of fact which require resolution by the trier of fact." <u>Tippens v. Celotex Corp.</u>, 805 F.2d 949, 953 (11th Cir. 1986).

"If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists." <u>Stein v. Ala. Sec'y of State</u>, 774 F.3d 689, 692 (11th Cir. 2014). Although the Court will consider *specific facts* alleged in a plaintiff's sworn complaint, <u>Perry v. Thompson</u>, 786 F.2d 1093, 1094-95 (11th Cir. 1986), a nonmovant may not rest upon general or conclusory allegations in his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986) (quoting pre-2010 version of Fed. R. Civil. P. 56(e));[1] <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888-89 (1990) (stating that general averments or conclusory allegations of the

_____

[1] "Rule 56 of the Federal Rules of Civil Procedure was amended in 2010 and no longer refers directly to the adverse party's burden to 'set out specific facts showing a genuine issue for trial' as expressed in former Rule 56(e)(2). Rather, the new Rule 56(c) now outlines procedures governing the provision of facts either in support of or opposition to the motion for summary judgment from which this same standard can be inferred, particularly in light of prior, well established Supreme Court precedent such as <u>Celotex</u> and <u>Anderson</u>." <u>Wilcox v. Career Step, LLC</u>, 929 F. Supp. 2d 1155, 1161 n.5 (D. Utah 2013).

4

complaint do not provide the required specific facts necessary to avoid summary judgment).  "[T]he non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact."  Irby v. Bittick, 44 F.3d 949, 953 (11th Cir. 1995) (quoting Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991)).  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat summary judgment.  Anderson, 477 U.S. at 252.  Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]"  Williamson v. Brevard Cty., 928 F.3d 1296, 1304 (11th Cir. 2019) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [for summary judgment.]"  Fed. R. Civ. P. 56(e)(2).  The Court's local rules (1) require the movant for summary judgment to provide a "separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried"; (2) require the respondent to provide individually numbered, concise responses to each of the movant's numbered material facts; and

(3) state that the movant's facts will be deemed admitted absent proper refutation. LR 56.1(B)(1), (2)(a)(1)&(2), NDGa.

**B.** **Plaintiff's Motion for Summary Judgment**

Plaintiff has filed a motion for summary judgment in which he appears to rely on his earlier filed, August 4, 2020, motion for summary judgment, which does not meet the requirements for a motion for summary judgment and which has been denied.[2]  [Doc. 35; see also Doc. 21].

Defendants argue that Plaintiff's motion should be denied as it contains no substance.  [Doc. 43 at 2].

The undersigned finds that denial of Plaintiff's motion is proper because Plaintiff has not met the initial responsibility of a movant to properly inform the Court, with record citations, of the undisputed facts that demonstrate he is entitled to judgment in his favor.  See Fed. R. Civ. P. 56(a), (c)(1); LR 56.1(B)(1); May v.

---

[2] On October 1, 2020, the Honorable Thomas W. Thrash, the District Court Judge assigned to this case, denied the August 4, 2020 motion for summary judgment. [Doc. 29].  Accordingly, in deference to Judge Thrash, the undersigned withdrew her earlier order that had denied the August 4, 2020 motion for summary judgment, construed as a motion for default judgment.  [See Docs. 21, 23, 29, 31].  The August 4, 2020 motion for summary judgment remains denied and, further, does not meet the requirements for a motion for summary judgment.  See LR 56.1(B)(1).

O'Gilvie-Carrington Ctr., Inc., No. 1:08-CV-3055-WBH-LTW, 2011 WL 13175976, at *3 (N.D. Ga. Jan. 26, 2011) ("Plaintiff has not filed a statement of undisputed material facts with his motion as required by the local rules. As a result, Plaintiff, who has the burden of proof at trial on each of his claims, has not met his initial burden of demonstrating that he can affirmatively establish each of the essential elements of his claims."), R. & R. adopted, 2011 WL 13177657 (N.D. Ga. Feb. 28, 2011); Booth v. Aurora Loan Servs., LLC, No. 1:09-CV-2150-WSD, 2010 WL 11597194, at *4 (N.D. Ga. Nov. 8, 2010) (denying the plaintiff's motion for summary judgment for failure to conform to the applicable rules of federal procedure, including failure to file a statement of undisputed material facts); Lumbermen's Underwriting All. v. Blount Int'l, Inc., No. 3:05-CV-064-JTC, 2007 WL 7603709, at *3 (N.D. Ga. Feb. 5, 2007) ("[Movant], because of its failure to comply with the Local Rules, has not met its initial responsibility of informing the Court of the portions of the record, which it believes demonstrates that no question of material fact exists[.]").

### C.     Defendant's Motion for Summary Judgment

#### 1.     Defendant's Statement of Material Facts

Defendant states the following material facts.

2.

Plaintiff has been incarcerated at the Cobb County Adult Detention Center (CCADC) on twenty-three (23) occasions since 1989. (Allen Decl. 5 and Attachment 1).[3]

3.

Plaintiff's twenty-second incarceration at the CCADC, which ran from September 29, 2019 to November 23, 2019, is the incarceration relevant to this action. (Allen Decl. 6).

4.

A lockdown of the CCADC was incrementally implemented throughout the facility from September 19, 2019 to September 23, 2019. (Allen Decl. 8).

5.

In the two months preceding the lockdown, inmates at the CCADC had become increasingly violent to one another and to staff. (Allen Decl. 9).

---

[3] Plaintiff's twenty-third incarceration began on 1/16/2020 and appears to be ongoing.  [Doc. 42-3 at 13].

8

6.

In August 2019, five deputies were injured by inmates. Four of the five injuries required immediate medical attention. (Allen Decl. 10).

7.

In August 2019, six inmates were sent to the emergency room due to inmate-on-inmate altercations. (Allen Decl. 11).

8.

From September 1, 2019 to September 19, 2019, nine deputies were injured by inmates. Six of the nine injuries required immediate medical attention. (Allen Decl. 12).

9.

From September 1, 2019 to September 19, 2019, six inmates were sent to the emergency room due to inmate-on-inmate altercations. (Allen Decl. 13).

10.

Sheriff Warren and Chief Deputy Sonya Allen initiated the lockdown on September 19, 2019, after two deputies working in cellblock 4 South 3 (4S3) were attacked by multiple inmates. One deputy was sent to the emergency room with injuries to his face and head. The second deputy was sent to the emergency room with injuries to his neck and knee. (Allen Decl. 14).

11.

Also, on September 19, 2019, prior to the attacks on the 4S3 deputies, there were two additional inmate fights, one of which required an inmate to be sent to the hospital. (Allen Decl. 15).

12.

During the lockdown, inmate privileges were suspended, which included visitation, commissary, recreational yard, phones and televisions. Each inmate was allowed 15 minutes out of his/her cell to shower and to clean his/her cell. (Allen Decl. 16).

13.

The lockdown served the legitimate penological interest of preventing and disincentivizing inmate non-compliance with facility rules, especially physical confrontations with one another and physical attacks of staff, which had become increasingly prevalent in August and September of 2019. (Allen Decl. 17).

14.

Specifically, in suspending inmates' abilities to use the telephone and receive visitors, the Sheriff's Office limited inmates' opportunities to interact with one another and staff members, thereby decreasing the opportunities for continued violence. (Allen Decl. 18).

15.

Moreover, in suspending inmates' abilities to use the telephone and to receive visitors, the Sheriff's Office sent a cautionary message to the inmate population that the increased level of violence would not be tolerated. (Allen Decl. 19).

16.

The only accommodation that would have served the Sheriff's legitimate penological interest (of limiting interaction between inmates and others), while still allowing inmates to use the telephones and receive visitors, was logistically impossible. (Allen Decl. 20).

17.

The accommodation would have required that each inmate have individual time out of his/her cell in order to place phone calls or receive visitors, so as to prevent the inmates from interacting. (Allen Decl. 21).

18.

As of Fall 2019, 4S3 housed, on average, sixty-one (61) inmates. (Allen Decl. 22).

19.

Therefore, in order to let each inmate out separately during the lockdown, the inmate could only be out of his/her cell for approximately 15 minutes, which allows just enough time for an inmate to shower and clean his/her cell. (Allen Decl. 23).

20.

The Sheriff and Chief considered showering and cleaning one's cell to be more critical to an inmate's overall health than telephone usage and visitation. (Allen Decl. 24).

21.

During the lockdown, inmates were still able to make calls to, and receive visits from, their attorneys. (Allen Decl. 25).

22.

On September 29, 2019, Plaintiff was booked in at the CCADC on charges of felony aggravated assault, misdemeanor battery/family violence, and misdemeanor cruelty to children in the third degree. (Allen Decl. 26 and Attachment 2).

23.

Plaintiff was briefly housed in the Infirmary on September 30, 2019. Plaintiff was then transferred to 3 South 1 (3S1), where he remained until October 2, 2019. 3S1 is a transition dorm, which was never placed on lockdown status so as not to impede inmates' abilities to make phone calls and post bond. (Allen Decl. 27).

24.

Telephones remained on in all transition housing areas and inmates were permitted to make telephone calls free of charge. (Allen Decl. 28).

25.

Telephone records show that Plaintiff made twenty-two free telephone calls from September 29, 2019 to October 2, 2019. (Allen Decl. 29 and Attachment 3).

26.

Plaintiff was moved to 4S3 on October 2, 2019 and remained in that cellblock until November 23, 2019, when he was taken to Inmate Release. (Allen Decl. 30).

27.

By virtue of his placement in 4S3, Plaintiff was in a lockdown status from October 2, 2019 to November 8, 2019, when dayroom privileges were reinstated in 4S3. (Allen Decl. 31).

28.

During the lockdown, inmates were provided alternative means for communicating with family and friends via regular U.S. Mail. (Allen Decl. 32).

29.

On October 4, 2019, inmates received a stamped envelope, two pieces of paper, and an ink pen. (Allen Decl. 33).

30.

On October 9, 2019, inmates received an indigent kit that contained, among other items, an ink pen, 8 pieces of lined notebook paper, and 4 stamped envelopes. (Allen Decl. 34).

31.

Plaintiff would have received his indigent kit on October 9, 2019, with his evening meal. (Allen Decl. 35).

32.

Beginning October 25, 2019, a plan was implemented to incrementally release the inmates from lockdown with one or two housing areas being released each day. (Allen Decl. 36).

33.

On November 8, 2019, when dayroom privileges were reinstated in 4S3, the telephones were turned back on. (Allen Decl. 37).

34.

Plaintiff and all other inmates in 4S3 were again placed on lockdown on November 12, 2019, after the inmates refused to cooperate with lockdown procedures and pill call. (Allen Decl. 38).

35.

From November 8, 2019 to November 12, 2019, Plaintiff made one phone call that lasted 1 minute and 25 seconds. Plaintiff would have had to pay for this telephone call. (Allen Decl. 39 and Attachment 3).

36.

The November 12, 2019 lockdown of 4S3 was lifted on November 14, 2019. During the two-day lockdown, the same lockdown restrictions applied. (Allen Decl. 40).

37.

Plaintiff was not in lockdown status from November 14, 2019 to his release on November 23, 2019. (Allen Decl. 41).

38.

From November 14, 2019 to November 23, 2019, Plaintiff made one phone call that lasted 8 minutes and 57 seconds. Plaintiff would have had to pay for this telephone call. (Allen Decl. 42 and Attachment 3).

14

39.

In total, Plaintiff was on lockdown status and, as a result, prevented from making telephone calls or receiving visitation from October 2, 2019 to November 8, 2019, and from November 12, 2019 to November 14, 2019. (Allen Decl. 43).

Defendant's exhibits support his above statements.  [See Doc. 42-3].

## 2.   **Defendant's Argument**

On January 20, 2021, Defendant filed, and certified that he had served Plaintiff with, his motion for summary judgment and a brief in support.  [Docs. 42, 42-1 (Defendant mistakenly titled both the motion and the brief as a brief in support)]. On January 25, 2021, Defendant filed, and certified that he had served Plaintiff with, a corrected copy of the motion for summary judgment, essentially the same as the January 20 motion but bearing the proper heading of motion for summary judgment. [Doc. 45].

In his motion for summary judgment, Defendant argues that the telephone/visitation restrictions bore a valid and rational relationship to legitimate penological interests, as shown by the mounting violence prior to the lockdown; that Plaintiff was provided alternative means of communication; and that, therefore, Plaintiff fails to show a violation of the First Amendment.  [Doc. 42-1 at 2, 11-15].

15

Defendant further argues that he is entitled to qualified immunity as he was acting within his discretionary authority and as Plaintiff fails to show the violation of any clearly established law.  [Id. at 2, 18-20].

### 3.    Plaintiff's Response

Plaintiff states that he received two summary-judgment motions (dated January 20 and January 25, 2021) from Defendant and that he received the January 25 motion first.  Based thereon, Plaintiff appears to question the timeliness of Defendant's motion for summary judgment.[4]  [Doc. 49 at 1].  Otherwise, Plaintiff states that the Court has already concluded that Defendant deprived Plaintiff of his First Amendment visitation and phone rights, that Defendant has admitted that Plaintiff was on lockdown, and that Plaintiff is, therefore, entitled to summary judgment.  [Id. at 2.]  Plaintiff does not respond further and has not provided a response to Defendant's statement of facts.  [Id. at 1-2].

---

[4] It is apparent that Defendant timely filed his motion for summary judgment and that Plaintiff simply received the January 25 correction first in time.  Plaintiff received a copy of the motion for summary judgment and has had an opportunity to respond, and the Court finds no issue with Defendant's compliance with time requirements.

16

4.     **Law and Recommendation**

Defendant's statement of material facts are deemed admitted based on Plaintiff's failure to file a response in compliance with the Court's local rules.  See LR 56.1(B)(2)(a)(2).

A prisoner's right to communicate is protected by the First Amendment, which balances the prisoner's interests against prison security and administrative concerns. Turner v. Safley, 482 U.S. 78, 84-93 (1987); see also Pope v. Hightower, 101 F.3d 1382, 1384 (11th Cir. 1996) (applying Turner, 482 U.S. at 89-91, factors to determine reasonableness of restrictions on prisoner's First Amendment right to telephone access).  In determining reasonableness, the court should consider:  "(1) whether there is a 'valid, rational connection' between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an 'exaggerated response' to prison concerns." Pope, 101 F.3d at 1384 (citing Turner, 482 U.S. at 89-91).

17

> "[A] prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution.[]"[] As a general matter, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."[]  Thus, prison officials are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."

Waganfeald v. Gusman, 674 F.3d 475, 485 (5th Cir. 2012) (citations omitted).

Although prisoners have a certain right to communication with others, there is no right to a particular avenue of communication, and the right may be satisfied by alternative means.  See Hunt v. Carver, CV 1:19-00356, 2021 WL 1202074, at *6 (S.D. W. Va. Mar. 30, 2021) (finding no First Amendment violation based on telephone-privilege loss for safety/disciplinary reasons when there was no indication that alternative means of communication were permanently or completely ineffective); Rindahl v. Noem, 4:20-CV-04044-RAL, 2021 WL 735788, at *5 (D.S.D. Feb. 25, 2021) (stating that although a prisoner may have a certain right to communication with others, "he does not have a constitutional right to a particular form of communication"); Chatman v. Clarke, 7:16CV00509, 2016 WL 7480426, at *2 (W.D. Va. Dec. 29, 2016) ("While prisoners have a First Amendment right to communicate with the outside world, . . . they do not have a constitutional right to a

18

particular form of communication . . . . Chatman clearly has the ability to communicate with the outside world through the regular mail, as he posted his § 1983 Complaint to the court."); Shelikhova v. Thomas, 4:15-CV-472-MW-GRJ, 2016 WL 7757282, at *7-8 (N.D. Fla. Dec. 1, 2016) ("Alternatives to visitation need not be ideal . . . they need only be available." (quoting Overton v. Bazzetta, 539 U.S. 126, 135 (2003)), R. & R. adopted, 2017 WL 149813 (N.D. Fla. Jan. 13, 2017); Williams v. Ozmint, CIV.A. 3:08-4139, 2010 WL 3808621, at *8 (D.S.C. July 22, 2010) (finding no violation of constitutional rights when the plaintiff's visitation privileges were suspended for two years based on prison security concerns and when the plaintiff had alternative means of communication, by mail or telephone), R. & R. adopted, 2010 WL 3814287 (D.S.C. Sept. 23, 2010); Cardona-Sandoval v. Rushing, No. 4:09-CV-2987, 2010 WL 1485414, at *1 (N.D. Ohio Apr. 13, 2010) (stating that prisoners have no per se constitutional right to use a telephone).

Further, qualified immunity "protect[s] government officials engaged in discretionary functions and sued in their individual capacities unless they violate 'clearly established federal statutory or constitutional rights of which a reasonable

19

person would have known.'"[5]  Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (quoting Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)).

As an initial matter, Plaintiff's statement – that the Court has already concluded that Defendant deprived Plaintiff of his First Amendment visitation and phone rights – is incorrect.  The Court determined that, "[d]epending on [*inter alia*] *the penological justifications that may come to light[] and other avenues of communication that may be open to Plaintiff*, his allegations of an ongoing lockdown, which apparently includes an ongoing denial of visitation and phone communication, are sufficient to raise a claim against the Sheriff based on a violation of his First Amendment communication rights."  [Doc. 12 at 9 (emphasis added); see also Doc. 18].  Penological justification and other avenues of communication are significant matters in deciding a First Amendment claim, and, in this case, they entitle Defendant to summary judgment.

It is undisputed that Plaintiff's twenty-second incarceration was from September 29 to November 23, 2019.  Additionally, the record shows that Plaintiff's

---

[5] There is no controversy that Defendant was performing a discretionary function.  [See Doc. 42-1 at 10; Doc. 49].

twenty-third incarceration began on January 16, 2020 and was ongoing at the time Plaintiff signed his complaint on February 1, 2020.  Although Plaintiff stated, without detail, "we on still lock down" when he signed his complaint, he does not dispute (1) that September 29 to November 23, 2019 is the time period relevant to his claim that he was deprived of his First Amendment visitation and phone rights or (2) that, during the relevant period, he was prevented from making telephone calls or receiving visitation from October 2 to November 8, 2019 and from November 12 to 14, 2019.[6]

Further, it is undisputed that the lockdown experienced by Plaintiff resulted from Defendant and officials acting to bring under control escalating violence, which began approximately two months before the lockdown was imposed and which included:  inmates injuring five deputies (four requiring immediate medical attention), inmate-on-inmate altercations causing six inmates to be sent to the emergency room, inmates injuring nine additional deputies (six requiring immediate medical attention), inmate-on-inmate altercations causing six additional inmates to be sent to the

---

[6] General averments or conclusory allegations of the complaint do not provide the required specific facts necessary to avoid summary judgment.  Lujan, 497 U.S. at 888.

emergency room, two additional inmate fights (requiring one inmate to be sent to the hospital), and multiple inmates attacking two deputies (both deputies being sent to the emergency room).   It is undisputed (1) that Defendant had a legitimate penological interest in preventing and disincentivizing inmate attacks on each other and the staff; (2) that the lockdown and suspension of telephone use and visitation (which nonetheless allowed attorney visits/communication and limited time for showering and cleaning) limited the inmates' opportunities to interact with other inmates and staff and decreased the opportunities for violence; and (3) that officials endeavored, within approximately one month of the initial lockdown, to incrementally reinstate privileges.   Additionally, it is undisputed that inmates, including Plaintiff, were provided with alternative means of communication while in lockdown.

On this record, the Court finds (1) that there was a valid and rational connection between the concern over violent and dangerous interactions and the suspension of phone and visitation privileges, in order to reduce opportunities for contact between inmates and between inmates and staff; (2) that alternative means of communication remained open to the inmates; (3) that to allow visitation and phone access would have increased prisoner contacts and opportunities for further violence

during a volatile time; and (4) that the timely, incremental reinstatement of privileges shows that officials were responding in a careful and considered manner, not an exaggerated manner.  The Court finds no violation of Plaintiff's First Amendment rights.  See Hunt, 2021 WL 1202074, at *6 (finding no First Amendment violation based on telephone-privilege loss for safety/disciplinary reasons when there was no indication that alternative means of communication were permanently or completely ineffective); Shelikhova, 2016 WL 7757282, at *7-8 ("Alternatives to visitation need not be ideal . . . they need only be available."); Williams, 2010 WL 3808621, at *8 (finding no violation of constitutional rights when the plaintiff's visitation privileges were suspended for two years based on prison security concerns and when the plaintiff had alternative means of communication, by mail or telephone).

Defendant is entitled to summary judgment because the undisputed facts show no violation of Plaintiff's First Amendment rights, clearly established or otherwise, and Defendant is entitled to qualified immunity.  See Varnadore v. Merritt, 778 F. App'x 808, 813 (11th Cir. 2019) ("Because we conclude that Merritt did not violate Foskey's [constitutional] rights in this case, it necessarily follows that there was no violation of a clearly established right.").

II.     **Conclusion**

Based on the above,

**IT IS ORDERED** Plaintiff's motion for default judgment [Doc. 44] is

**DENIED**.

**IT IS RECOMMENDED** that Plaintiff's motion for summary judgment [Doc.

35] be **DENIED**, that Defendant's motion for summary judgment [Docs. 42, 45] be

**GRANTED**, and that this action and Defendant be **DISMISSED**.

The Clerk of Court is **DIRECTED** to withdraw the referral to the undersigned

Magistrate Judge.

**IT IS SO ORDERED**, **RECOMMENDED**, **and DIRECTED**, this 7th day

of May, 2021.

REGINA D. CANNON
UNITED STATES MAGISTRATE JUDGE

24